Thank you, Judge Tallman, and may it please the Court, I'm Mark Caldwell. I'm here to represent Mr. Seaton this morning in one of the many Social Security cases that you are hearing. This case is also a case regarding the remedy that is appropriate. I would like to begin by narrowing some issues that really would take care of almost two-thirds of what the Commissioner has argued. The Commissioner has indicated that there is an issue as to whether the District Court has discretion to remand for further proceedings versus for award of benefits. That is a non-issue. The District Court does have that discretion. That's not the issue. The issue is whether that discretion was properly exercised under this Court's standards under the credit as true rule. The Commissioner has also argued, and this dovetails with your prior case that you just heard, using the Straus opinion, that remand for payment of benefits based upon non-statutory considerations, such as delays, such as financial hardship, et cetera, is inappropriate. That is also true. Benefits are only to be paid even under the credit as true rule to claimants who are, in fact, disabled. And that is why it's appropriate here, because the treating physician's opinion establishes that Mr. Seaton is disabled. I refer to Dr. Crawford, and the difficulty with the District Court's order was the District Court said the remand is to reevaluate medical opinions and the claimant's symptom testimony. Well, if that were the case, then we can take the credit as true rule and crumple it up and throw it out the window. Well, the problem, though, as I understand it, is that even if we applied the credit as true rule to the three opinions that Judge Martone found were improperly rejected, aren't there some conflicts within and among those three opinions? Isn't that what was concerning the judge? And then further, that there's no vocational expert testimony with regard to jobs. Well, why are those not issues that remain to be resolved on remand and, therefore, fit within the criteria of the credit as true rule, and, therefore, we would conclude there was no abuse of discretion in remand? I'm going to have several answers for you. Okay. I know it wasn't compound law, but take it in any order you want. The first answer is that if a conflict in the evidence were a basis for always having a remand, then you would, again, almost never have the credit as true rule because, for example, there are always conflicts in the medical evidence between the non-examining state agency physicians at the initial reconsideration stages, here Dr. Maloney, and whatever other evidence establishes disability. Why? Because all cases are denied at the initial reconsideration stages based upon those non-examining physician assessments. So every single case has a conflict in the evidence in a social security matter that reaches a hearing before an administrative law judge. My second answer is that the basis for the district court's order was that there were vastly different opinions between two treating physicians, namely Dr. Crawford and Dr. Hanks. I'm going to rephrase that and say there were barely different opinions between those two doctors. Both doctors stated that the claimant was limited to four hours of sitting, which is inconsistent with sedentary work. The only distinction that I saw between those two doctors' opinions — I'm going to rephrase that. There's two differences between those two doctors' opinions. One were various postural limitations, bending, crawling, et cetera, which aren't going to have anything to do with whether this claimant can perform sedentary work. They're differences, but they're specious differences. The second factor, however, is that Dr. Crawford gave an unrebutted opinion regarding the effect that pain would have on the claimant's ability to sit. Dr. Crawford rated the highest level, severe pain, which by definition precludes ability to function. Which brings me to my third answer, the vocational expert testimony. I'm going to cite the Beneke case, and Mr. Slepian pointed out to you that that was my case, but it's the right authority for this proposition. It's the wrong case. You know, you can have a right case. Like I say about the Ninth Circuit, we may have affirmed, but the district judge still thinks we got it right. But what Beneke says is this. If the evidence clearly establishes disability, it's not every single case that requires a vocational expert. I mean, after all, what is the trial attorney supposed to do here? Say, Mr. or Mrs. Vocational Expert, I want you to assume a person who suffers from severe pain that by definition precludes ability to function. Can that person function? We're wasting our time. We're wasting the administration's time, for that matter. So there is no significant conflict in the medical evidence. You do, however, to be fair about it, have Dr. Otteny, who performed a consultative examination. However, there, Dr. Otteny didn't have any medical records at all. And as I point out in my brief, it's fundamental in the commissioner's own regulations that the consultative examiner be furnished with background medical records. And it's particularly important here because we have two MRIs that show an annual or two MRIs. And we have two MRIs that show bilateral lumbar tear. And in my mind, even more important, we have electromyography and nerve conduction studies that show bilateral lumbar radiculopathy, ER 347. That is evidence that the treating physicians did have available to them. So again, we have what I will respectfully refer to as a specious inconsistency. This is not a complicated case. This case is a simple case. This case is where the longtime treating physician, I'm talking about over a period of years, gave limitations facially inconsistent with even sedentary work, the easiest level of work there is under Social Security regulations. Not contradicted by Dr. Hanks, who, with all due respect to Dr. Hanks, barely qualifies as a treating physician because he only performed one examination. But that really isn't the point. Both Dr. Crawford and Dr. Hanks limited the claimant to four hours of sitting. That is facially inconsistent with even sedentary work. But moreover, Dr. Crawford, unlike Dr. Hanks, assessed pain at a level that would preclude ability to function. Although you could say that Dr. Otney gave a different opinion, I'm going to say that it's different but not conflicting, which may seem a little strange. Here's why I say that. If two doctors look at the same evidence and come to different opinions, then that's a conflict. If one doctor is basing the opinion upon longtime treating experience and very probative objective studies that I've cited in terms of MRIs and electromyography studies and gives a different opinion, that's not a conflict because they're basing their opinions upon different sets of facts. Well, I'm going to be a little careful there because I don't want to be disparaging. I'm not saying competency in the sense that the doctor is incompetent. She has an MD after her name or a DO. No, I meant with regard to the volume and the nature of the medical records, which you say she didn't have. Spot on. That's absolutely correct. Underlie her ability to form a meaningful opinion. That's essentially an attack on the weight that the ALJ, as the finder of fact, should have accorded to her opinion versus Dr. Crawford's. And it's very clear from the opinion that the ALJ gave full weight to Dr. Otney's opinion and little weight to Dr. Crawford's. And you're saying it should have been just the reverse. The other way around. But I am not, to be clear, asking this Court to reweigh the evidence, because we all know that that's something the administrative law judge is supposed to do. I'm asking this Court to apply the proper legal standards that should be applied when evaluating treating source assessments versus non-treating source assessments, and that's a different animal. But it does get a little tricky here, because what you're asking us to do is to say, even though the district court thought that it was remanded to resolve the issue that you're attacking, that we should nonetheless say that's not really an issue that needs to be resolved for the reasons that you just articulated. Yes. I'm going to try to reserve some rebuttal time here, but let me finish by answering that question directly. A remand to re-evaluate is antithetical to the credit as true rule, because if re-evaluation, a second bite at the apple, was always available whenever there was a conflict in the evidence, then the credit as true rule would simply cease to exist. The best case on that is the Oren case, O-R-N, of 495F3-625. And that's a case where the Court had before the treating physician opinion and the consultative examiner's opinion, and the Court said that's not enough. So if I may finish at that point and reserve the remainder of my time. Thank you. Good morning, Your Honors. Mike Howard, representing the Commissioner. I will attempt to hit the issues that Plaintiffs was addressing in his opening remarks here today, and try not to keep ‑‑ I'll try to keep it from being too disjointed. Can you get close to that microphone? For some reason, your voice, I think, is so soft that I'm having a hard time hearing you. All right. Your Honors, as a matter of an overview, this is a case where Plaintiff's own treating physicians did not agree if he was disabled. And the District Court had discretion in the choice of remedy in this case, and very reasonably, the Court would have allowed the ALJ as a fact-finder to re-weigh all this evidence. And Plaintiff has failed to show that that was abuse of discretion. To address, just to briefly touch on Plaintiff's claim that he was made, that was a legal claim, that essentially the credited true rule does not allow the Court to remand for the ALJ to re-evaluate the credibility of testimony or opinions. That is incorrect. And the cases studied in our brief, both McAllister and Connett, recognize that the Court can certainly remand for the ALJ to re-evaluate testimony. But I'd like to focus on some of the basic issues in this case, which show that, very simply, under the three-part test, which has been called the small-end test at times, that there are outstanding issues that remain that preclude, that precluded the District Court from using the credited true rule to award a finding of disability. And essentially, the legal issue, the broader legal issue is about whether there is discretion to apply the rule or not, are not really as central to the Court's disposition of this case today. It's very simply that there are outstanding issues and that a finding of disability is not clear from the record. So the first outstanding issue to touch on, and I'll try to group some Plaintiff's arguments here, is that there are conflicting physician opinions in the record. And the first I'll talk about is the conflict between two of the treating physicians, Dr. Crawford and Dr. Hanks. And essentially, on the, each physician gave opinions, completed opinions, and then the court gave additional opinions, mostly focused on physical limitations, and Dr. Crawford, as Plaintiff points out, gave an additional opinion about pain. But just reading the face of each of the doctors' opinions about physical limitations, they are inconsistent. And I'd submit that the issue of postural limitations, which would be things like crawling, bending, or stooping, are very material in this case, contrary to what Plaintiff says, because that involves the use of the back. And Dr. Crawford said, across the board, just went down the line and said Plaintiff can never use, never do these activities that essentially involve moving the back away from an upright position in the workplace. Whereas Dr. Hanks said that Plaintiff could do these activities from frequently to occasionally, depending on which one. I think that is definitely a material issue when you're talking about the use of the back in the workplace over the course of the day. And a second way that they depart from each other that Plaintiff did not touch on, and this, is that Plaintiff, Dr. Crawford said that Plaintiff could never work around exposed heights or moving machinery. And he said it was because of his various symptoms due to his back pain, such as claimed leg weakness and things of this nature. So essentially, his symptoms due to his back pain are so significant that he can't work around these workplace hazards. And even if those aren't found in most jobs, if they're not found in an office job, that isn't really the issue. The issue is Dr. Crawford thought his symptoms were so significant that he couldn't be around these hazards safely. Whereas Dr. Hanks said that Plaintiff could. So clearly, the two treating physicians on the face of the world has affected him. And I think those are material differences. How does the difference impact on the RFC? Take Dr. Hanks finds less severe limitations. And I confess now I'm completely lost because I've confused doctors. The claimant has suggested that in the end, the differences between the doctors turn out not to be very significant. You're obviously intending that they are. How does it make a difference? Well, I believe I would answer Your Honor's question by saying that Dr. Hanks, his limitations would not equate to a finding of disability in any way. Plaintiff has kind of worded this as being less than sedentary. I think the term he was using to describe Dr. Hanks' opinions. And while he did say he was around 24, I believe it was around four hours during the workday, he said he could lift, I think, 20 pounds. But in any case, that's a material. We're dealing here with a younger individual. And agency regulations break some of this assessment out by the claimant's age. And a younger individual, limited to less than sedentary work, does not have a finding of per se disability under the medical vocational guidelines. And the colloquial way we would say that is that they do not grid out under the regulations, because they're a younger individual. So the fact that Dr. Hanks... What stuck in my head, and I'm flipping through and trying to find it, but it seemed to me there was this limitation. I think it was less than four hours for sitting. Is that consistent with sedentary? Well, Your Honor, I'd say that Dr. Hanks' limitations fall somewhere between the range of light and sedentary, and that they don't necessarily have to equate to the general definitions of the term sedentary work that we use in the agency, or the general definition of the term light work, if that does answer Your Honor's question. Because the lifting limitation of 20 pounds is more along the lines of light work, and so is his ability to stand and walk in Dr. Hanks' opinion, if that did answer Your Honor's question. And so moving on in the issue of the physician's opinions, so I hope I've established that there is indeed this material conflict between the two treating physician opinions. And plaintiff cites the case of Orne v. Astrew to say that the court should simply credit Dr. Crawford. But Orne, as we explain in our brief, does not support the arbitrary selection of one treating physician over another treating physician, simply because one of them is in plaintiff's favor. The Orne case was crediting a treating physician opinion to the exclusion of opinions that would not have supported the decision on their own anyways. And here we have two treating physicians, and the Orne case would not support, I'd submit, would not support the court privileging Dr. Crawford's opinions over those of Dr. Hanks, and making that finding a fact just because it's in plaintiff's favor. The Orne case would not support the exclusion of opinions over those of Dr. Hanks, and making that finding a fact just because it's in plaintiff's favor. And then I would also just briefly touch on the fact that Dr. Crawford's opinion is conflicted with those of the examining physician, Dr. Ottney, and the non-examining physician, Dr. Maloney. I don't think that this is as central, it's not as required and central to our arguments today. But I want to touch on plaintiff's argument that the examination with Dr. Ottney somehow violated agency regulations. And I think that point is simply wrong. I think that point is simply incorrect. It was raised briefly in the briefs. But plaintiff, I think they're simply not presenting the full language of the regulation that they're trying to argue was violated. And simply there's no requirement, I would submit, in the agency regulations that each of the examiners be presented with the full medical history and records of each claimant that they see. While that might be desirable, there's no per se requirement for that. And so there isn't this regulatory violation that plaintiff's arguing happened. And the relevant regulation on that point is 20 CFR 404.1519N, N as in Nathan. I'm sorry, your voice dropped off at the end. 404. 1519N as in Nathan. I'd like to move on to a second outstanding issue that I don't believe plaintiff addressed in their argument today. And that's the evidence does not establish an onset date of disability. And the court, this court has previously declined to apply the credit as true doctrine when this has been the case. And I think the Luna case is one example of that. Basically, Dr. Crawford's opinion was given in 2009. And it does not state it's retroactive. And while I think any reasonable person would say, well, I mean, Dr. Crawford is probably not just claiming these limitations started the day he signed the form, I think it would be very strained to say that 2009 opinion reaches back years earlier, reaches back to 2007 or to 2005. And we also have a factual issue in this case where plaintiff, when he applied for disability, he claimed to be disabled due to hernias. And on appeal to this court, he's not challenging the finding that those hernias are essentially not at issue. They're not severe at all. So, and that's what he's alleging made him disabled from 2005 up to June 2007. And the other problem I think we have, do we not, is that the ALJ found that he was not fully credible? Yes, Your Honor. Okay. Yeah, certainly I'd be happy to touch on that as well. So to discuss the credibility finding, as I was mentioning earlier, the McAllister and Connick cases would certainly support the idea that it would be entirely within the district court's discretion to remand the case for the ALJ to take a second look at plaintiff's own credibility, that there may be reasons in the record to question it or there may not be. In either event, those cases support that decision by the district court. And to talk about plaintiff's testimony under this point, about the onset date, the plaintiff was testifying at the hearing and before the ALJ, and as we pointed out in our brief, his testimony was fairly vague. It didn't really, we would, the commissioner would not concede that his testimony, even on its face, resulted in a finding of disability at the time of that hearing. But in any case, he's talking about these back pain symptoms and things like that that have evolved over time and that have evolved since a car accident. And just to briefly talk about an argument that was raised, which is, I believe, if I understand it correctly, would be plaintiff wanting the court to set his onset date and sort of make a finding of fact for him that he was disabled as of a car accident that he was in, for plaintiff to ask the court to make that finding. Again, the doctor's opinions don't reach back to the date of that car accident. On that car accident day, he was taken to the hospital, but there wasn't, this wasn't a case where there was some horrific acute injury that clearly rendered this person disabled in this car accident. He had an annual tear, which would be a tear in the lining of a car, and he had a herniate, so the actual interior of the disc did not come out and impinge on nerves and things of that nature. And so we have some, like, mixed findings in the record later, but right after that car accident, plaintiff just went to a chiropractor, and some of the treatment and things like that happened later. So we have a very, I'd argue, what I'm trying to establish is we have a very mixed picture that doesn't show a very, a clear, dramatic onset of an acute injury. With this June 2007 car accident, that would warrant the court making, accrediting evidence to that date. I'd like to touch on the issue of vocational expert testimony. It has been recognized, and we cite these cases in our brief in Harmon, and I believe also in Hallahan, that the court, in Harmon, the court presented as, they have, the court has consistently, that's a very broad term, the court's term, has consistently remanded in cases where there isn't a vocational expert testimony, establishing that the testimony at issue results in disability. And that's simply what the commissioner is advocating in this case. This is essentially one of those cases where the court has consistently remanded for further proceedings. Beneke is acknowledged that it would be an unusual case where it would be to the contrary, and I'd also note that in Beneke, if I recall correctly, there was already vocational expert testimony already. That wasn't directly on point, but it was present, and the evidence in that case was different. And finally, the issue here is really not the court taking a fresh look at this case, but did the district court abuse its discretion? You know, given these authorities from the Ninth Circuit and the lack of vocational expert testimony, was it completely unreasonable for the district court to remand for further proceedings? I'd say PLANF has not in any way. Your Honor, as to conclude, unless the Court has further questions, I yield the remainder, brief remainder of my time. I think not. Thank you very much. Thank you. Your Honor, when he says he yields it, does that mean I get it? No, it doesn't. I didn't think so. So there's a shot. No benefits like that awarded. Here's what Beneke says, word for word. The other two cases I want to talk about that are relied upon heavily by the Commissioner are McAllister and Conant. Both of those cases were correctly remanded for further proceedings. McAllister involved two separate administrative law judge hearings before two separate administrative law judges. A medical expert testified at the first and was not present at the second, and it wasn't clear whether the ALJ in the second case had relied upon the medical expert testimony from the first. Obviously appropriate to remand that. Conant is a case that was clearly appropriate for remand for further proceedings. In that case, this Court noted that, as Judge Clipton was talking earlier about the prohibition of post-op rationale, that the district court had identified many discrepancies in the claimant's testimony, and this Court could not consider that, but it was certainly appropriate to remand for reconciliation of those many discrepancies. Absolutely appropriate for remand under those circumstances. Those circumstances are not these circumstances. As to the onset date issue, please go to my reply brief. I addressed that, and quite frankly, I said, the Commissioner has a point. But my point was that the onset could be changed to June 2007. As a factual matter, I disagree with counsel that we don't have good evidence then. We have very good evidence then. We have MRIs showing the annular tear. More significantly, in my opinion, we have the electromyography studies showing the nerve damage leading to radiculopathy. Not only does the statute allow this court to do that, because the statute says a reviewing court may reverse, modify, or affirm the agency decision, but in the two cases I cite in my brief, Vertigan and Gatliff, this Court did precisely what I asked. And I'm suggesting it would be appropriate here. I mean, I think there's no question that we could. The question is, do we have to? Or was it an abuse of discretion for the district court to do what it is? District court didn't remand to talk about the onset date, not at all. District court didn't even mention the onset date. So are you asking us to make the factual finding on the onset date? You're allowed to, under the statute that says a reviewing court can modify the agency's decision when I myself am concerned conceding that. I have never understood the word modify in that regard to mean that it empowers the court appeals to resolve a key factual dispute. Let me testify that there are some district judges who feel that they modify the facts all the time. But that's not what we're supposed to do, is it, an appellate judge? Go look at Gatliff. Go look at Vertigan. This Court said under those two cases that we remand for payment of benefits, but there's an onset date change that's appropriate. And just like Venicky said, sending these things back over and over and over again is not only harmful to the claimants, it's a waste of administrative time. What date and why? June 2007. And that's tied to the accident? It's tied to the accident, but more importantly than just tied to the accident, it's tied to the MRI findings. And shortly thereafter, I believe it was October of 2007, was the electromyography study that established the nerve damage. So these are concrete things you can hang your hat on. Thank you, Judge.
judges: Duffy, Tallman, Clifton